UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re:

EARLE STANLEY GREER,　　　　　　　　　　　Chapter 11

　　　　　　　　　　　　　　　　　　　　　　Case No. 18-18146-elf
　　　　　　　Debtor.

DEBTOR'S AMENDED DISCLOSURE STATEMENT

AND NOTICE OF HEARING DATE

I.　　INTRODUCTION

　　This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Earle Stanley Greer (the "Debtor"). This Disclosure Statement provides information about the Debtor and the Plan filed on November 4, 2019 (the "Plan") to help you decide how to vote. A copy of the Plan is attached as Exhibit "A". Your rights may be affected. You should read the Plan and this Disclosure Statement carefully. You may wish to consult an attorney about your rights and your treatment under the Plan.

　　The proposed distributions under the Plan are discussed at pages hereafter in of this Disclosure Statement. General unsecured creditors are classified in Classes 4 and 5, and as described in greater detail herein, are eligible to receive a pro rata percentage of their allowed claims based upon the disposable income of the Debtor as estimated herein, to be distributed under and pursuant to this Plan.

　　A.　　Purpose of This Document

　　This Disclosure Statement describes: (a) the Debtor and significant events during the bankruptcy case; (b) how the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed); (c) who can vote on or object to the Plan; (d) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; (e) why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and (f) the effect of confirmation of the Plan.

　　Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

　　B.　　Notice of Hearing

　　The Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order has been entered setting a hearing date:

1. The time and place of the hearing at which all objections to the Disclosure Statement and Plan will be heard:

> November 20, 2019 @ 9:00 am
> US Courthouse
> 900 Market Street
> Courtroom 1, 2nd Floor
> Philadelphia, PA 19107

2. All parties objecting to the of adequacy disclosure statement and confirmation of the Plan will be heard at that time without any previous filings.

If you want additional information about the Plan or the voting procedure, you should contact Valerie A. Hibbert, Esquire, 22 North Lansdowne Avenue, Lansdowne, PA 19050, (610) 622-3660, vah963@gmail.com.

C. Disclaimer

The Court has not approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation.

II. BACKGROUND

A. Description and History of the Debtor's Business

Debtor is seeking relief herein predominantly from taxes, water service and code violations which have merged into liens against the properties which provide the rents comprising his sole income. The liens are for less than the properties' value. Thus, the liens are and will be paid under all scenarios. The insistence of the City of Philadelphia to be paid without regard to the interest of the Debtor to continue in business and the mortgagors being paid offends the purpose of the Bankruptcy code. For, if the City forces lien tax sales of the properties, the Debtor loses his income and mortgagors lose their investment.

The Debtor is an individual. Since 1995, the Debtor has been in the business of owning and renting single family residential real property located in Philadelphia and Delaware County Pa.

During the course of operating his business, the Debtor was the sole owner and operator of twenty eight (28) residential properties in Philadelphia and Delaware Co, at the time of the Bankruptcy Petition the Debtor owned and operated twenty eight (28) rental properties which are as follows:

> 1328 Wycombe Ave Darby Pa 19023
> 735 S Cecil Street Philadelphia Pa 19143
> 1339 Narragansett Street Philadelphia Pa 19138
> 137 N Ruby Street Philadelphia Pa 19131
> 149 N Edgewood Street Philadelphia Pa 19139
> 1508 Rainer Rd Brookhaven Pa 19015
> 21 N Edgewood Street Philadelphia Pa 19139
> 2101 S 68th Street Philadelphia Pa 19142
> 215 Spring Valley Rd Darby Pa 19023
> 228 Spring Valley Rd Darby Pa 19023
> 2403 S Edgewood Street Philadelphia Pa 19142
> 2510 Bonnaffonn Street Philadelphia Pa 19142
> 2536 Bonnaffon Street Philadelphia Pa 19142

2554 Bonnaffon Street Philadelphia Pa 19142
2620 S 68th Street Philadelphia Pa 19142
266 S Alden Street Philadelphia Pa 19139
29 N Ruby Street Philadelphia Pa 19139
6856 Guyer Street Philadelphia Pa 19142
5107 Folsom Street Philadelphia Pa 19139
512 N Vodges Street Philadelphia Pa 19131
5237 Race Street Philadelphia Pa 19131
5461 Cedar Ave Philadelphia Pa 19143
5711 Reedland Street Philadelphia Pa 19143
5715 Reedland Street Philadelphia Pa 19143
5721 Haverford Ave Philadelphia Pa 19139
1329 Edgehill Rd Darby Pa 19023
324 Darby Terr Darby Pa 19023
418 S 3rd Street Colwyn Pa 19023

At the time of filing the Petition Date, nineteen (19) of the Debtor's rental properties were occupied, the remaining properties were vacant and in need of renovations, repairs or construction.

B.    Insiders of the Debtor

The Debtor's wife, Reanie Greer, is a joint owner of the Debtor's primary residence at 3 Carriage Lane, Lansdowne PA 19050.

The Debtor owns and manages properties in Spring Valley Real Estate Dev LLC, EG Foundation LLC and Waterstone Capital LLC.

C.    Management of the Debtor During the Bankruptcy

The Debtor is an individual and has managed his business in the same capacity prior to and during his Chapter 11 proceeding. The Debtor will continue to act in the same capacity post-confirmation.

D.    Events Leading to Chapter 11 Filing

In December 2015 the Debtors largest lender Susquehanna Bank was taken over by BB&T Bank, at that time BB&T informed the Debtor they would not be doing his type of Real Estate loans and they would not be renewing the terms of his loans. Then they sent letters to all the Debtors tenants telling them that all rent should be sent to the bank. No one paid Rent to the Debtor or to the Bank. Most tenants moved out and some stayed but didn't pay the rent. This left the Debtor with no income and most of the properties vacant or with a tenant that had to be evicted.

The Debtor Filed for Bankruptcy to try and save his business, income and livelihood, after months the bankruptcy was dismissed, but the Debtor was able to work out payment agreements with all his secured creditors and has been paying as agreed. At this point the Debtor is working to get all the properties repaired, rented and generating income so he can pay off all his creditors.

E. Significant Events During the Bankruptcy Case

During the course of the bankruptcy, the Debtor has repaired and renovated (6) properties which are currently rented and has been repairing and renovating (3) additional properties which the Debtor hopes will be rented within the next few months. In addition, Debtor reached an agreement with all secured creditors, which he is keeping. This is evidenced by the lack filing for arrearage or motions for relief.

The Debtor has been paying all his secured creditors as agreed.

F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims and shall file objections on or before sixty (60) days from the effective date of the order confirming the Debtor's Plan. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan.

H. Current and Historical Financial Conditions

The identity and reasonable market value of the estate's assets are listed in Exhibit B (a copy of the Debtor's Schedule A/B). The Debtor's assets consist of real property rentals, some of which are vacant and in need of repairs and renovation. The Debtor is very familiar with the real estate market where the properties are located and what renovations are necessary at each property.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A. What Is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Therefore, the Plan Proponent has not placed the following claims in any class:

1. Administrative expenses, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses include the value of goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under § 330(a) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The Code also requires that fees owed under § 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date. | Expenses are paid current | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the Court. | None | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan. |
| Other administrative expenses | Gary F. Seitz, as City Sequestrator in the amount of $4,000 (proof of claim number 3,4,5). | Objection to $4000 claim |
| Office of the U.S. Trustee Fees | $0.00 | Paid quarterly with any outstanding balance paid in full on the effective date of the Plan. |
| Total: | $4,000.00 | |

2. Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan: NONE

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
|  |  |  |  |

  C.  Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

  1.  Classes of secured claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim.

  A.  Consensual Secured Claims

The following charts list all of the Debtor's consensual secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Collateral | Insider | Impairment | Treatment |
|---|---|---|---|---|---|
| Class 1 | PNC Bank | 3 Carriage Lane<br>Priority of lien: 1 st<br>Arrearage: $1,524.00<br>Total Claim $84,606 | No | Yes | Debtor will continue to make monthly payments pursuant to the loan documents. |
|  | Santander Consumer | 3 Carriage Lane<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: $41,207<br>2017 Ford Explorer<br><br>Arrearage: $0.00<br>Total Claim: $32,551 |  |  | Arrears to be paid over a 5 year. from the Order of relief @ $31.00 for 50 months.<br>--------<br>No arrearage claimed<br>No relief has been sought<br><br>Loan is being paid pursuant to loan documents |

| Class | Description | Collateral | Insider | Impairment | Treatment |
|---|---|---|---|---|---|
| Class #1 | BB&T Bank | 2101 S 68th Street<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: 25,000 | No | Yes | Debtor will continue to make monthly payments pursuant to the loan documents.<br><br>No arrearage has been claimed.<br><br>No relief has sought be BB&T |
| | | 215 Spring Valley Rd<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: $22,000 | | | |
| | | 2403 S Edgewood Street.<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: $21,000 | | | |
| | | 2510 Bonnaffon St<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: $ 23,000 | | | |
| | | 2536 Bonnaffon St<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: $19,000 | | | |
| | | 2554 Bonnaffon St<br>Priority of lien: 1 st<br>Arrearage: $0.00<br>Total Claim: $21,000 | | | |
| | | 2620 S 68th Street<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim:$23,000 | | | |
| | | 266 S Alden St<br>Priority of lien: 1 st<br>Arrearage:  $0.00<br><br>Total Claim: $22,015 | | | |
| | | 29 N Ruby St<br>Priority of lien: 1 st<br>Arrearage: $ *0.00*<br>Total Claim: $19,010 | | | |
| | | 6856 Guyer Ave<br>Priority of Lien: 1st<br>Arrearage:  $0.00<br>Total Claim: $21,200 | | | |
| | | 1328 Wycombe Ave<br>Priority of Lien 1st<br>Arrearage: $0.00<br>Total Claim: $23,200 | | | |
| | | 5237 Race St<br>Priority of Lien: 1st<br>Arrearage $0.00<br>Total Claim $23,000 | | | |

Case 18-18146-elf   Doc 116   Filed 11/07/19   Entered 11/07/19 14:17:35   Desc Main
Document   Page 7 of 19

| Class | Description | Collateral | Insider | Impairment | Treatment |
|---|---|---|---|---|---|
| Class #1 | BB&T Bank | | | | |

| Class | Description | Collateral | Insider | Impairment | Treatment |
|---|---|---|---|---|---|
| Class #1 | BB&T Bank | 5711 Reedland St<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: $21,015<br><br>5715 Reedland St<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: $21,150<br><br>5721 Haverford Ave<br>Priority of Lien: 1st<br>Arrearage $0.00<br>Total Claim $22,100<br><br>1329 Edgehill Rd<br>Priority of Lien 1st<br>Arrearage: $0.00<br>Total Claim: $23,375<br><br>324 Darby Ter<br>Priority of Lien: 1st<br>Arrearage: $0.00<br>Total Claim $23,500<br><br>418 S 3rd<br>Priority of Lien: 1st<br>Arrearage: $0.00<br>Total Claim: $25,100 | No | Yes | Debtor will continue to make monthly payments pursuant to the loan documents. |

| Class | Description | Collateral | Insider | Impairment | Treatment |
|---|---|---|---|---|---|
| Class #1 | BB&T Bank | 1399 Narragansett St<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: $23,015<br><br>1508 Rainer Road<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim $24,150<br><br>5461 Cedar Ave<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: 110,000<br><br>512 Vodges St<br>Priority of lien: 1st<br>Arrearage: $0.00<br>Total Claim: 41,000 | No | Yes | Debtor will continue to make monthly payments pursuant to the loan documents.<br><br>Debtor will continue to make monthly payments pursuant to the loan documents, No claim for arrears has been filed. No relief has been sought. |

B. Nonconsensual Secured Claims

The following chart lists all of the Debtor's nonconsensual secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| Class # 2 | Water Revenue Bureau Lien on properties $116.622.33 | No | Yes | Regular installments paid over a period not exceeding 10 year amount of $1,061.00 at 110 Months |
| Class # 2 | City of Philadelphia $130,504.00 (lien on properties) | No | Yes | Paid in installments over a period not exceeding 5 year period from the order of relief. $2610.00 @ 50 months |
| Class #2 | Delaware County Tax Bureau Tax lien $115,568 | No | Yes | Paid in installments over a period of 10 years from the order of relief $1050 @ 110 months |

3. Classes of priority unsecured claims

The Code requires that, with respect to a class of claims of a kind referred to in §§ 507(a)(1), (4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class # 3 | NONE | n/a | Each holder of a priority claim will be paid in a manner consistent with §1129(a) of the Code. |

4. Classes of general unsecured claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of classes 4 through 5, which contain general unsecured claims against the Debtor:

A. Class 4 Vendors and Consensual Creditors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class # 4 | General Unsecured Creditors; aggregate number of claims is approximately $99,597.05<br>City of Philadelphia $799<br>AFNI $328.00<br>American Express $23,338.23<br>Bank of America $28.00<br>Infiniti Financial Services $6,000.00<br>Swift Financial LLC $23,103.82<br>Wells Fargo $46,000 | Yes | $1,659 - Debtor will make monthly payments after the first 60 months of his filing. This payment to begin 1/10/2024 |
| | Cornerstone Bank $964,155.99 | Yes | Notes which are being made on time as agreed |

Class 5 General Unsecured Litigation Creditors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class # 5 | Garry F. Seitz | Yes | Claim is disputed debtor will file objection |
| Class#5 | Pennsylvania Department of Rev. | Yes | Claim is disputed debtor will file objection |
| Class# 5 | Philadelphia Gas Works | Yes | Claim is disputed debtor will file objection |
| Class#5 | City of Philadelphia | Yes | Claim is disputed debtor will file objection |

6. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders: [There may be more than one class of equity interests in, for example, a partnership case, or a case where the prepetition Debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
| --- | --- | --- | --- |
| Class # 6 | Earle Greer | No | All equity holders shall retain their equity post-confirmation, in exchange for the elimination of any outstanding prepetition loan payable, upon contributions of money of the Debtor |

|  |  |  | and contribution of money's worth of the Debtor's continued operations of his business. |
|--|--|--|--|

D. Means of Implementing the Plan

1. Source of payments

Payments and distributions under the Plan will be funded by income from the current rental properties, and income from the remaining properties that are being renovated.

2. Post-confirmation Management

The Post-Confirmation Management of the Debtor (including officers, directors, managing members, and other persons in control), and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no) | Compensation |
|--|--|--|--|
| Earle S. Greer |  | Yes | No |

E. Risk Factors

The proposed Plan has the following risks: the only real risk the Debtor foresees is a recession during the term of the Plan that could negatively impact the housing or rental market, which could in turn impact his ability to collect rent from his tenants, rent his properties.

F. Executory Contracts and Unexpired Leases

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.
All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion

to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

The Debtor intends to assume the lease for the following properties:

    2101 S 68th Street, Philadelphia, PA
    2403 S Edgewood Street Philadelphia, PA
    2510 Bonnaffon Street, Philadelphia, PA
    2536 Bonaffonn Street, Philadelphia, PA
    6856 Guyer Ave, Philadelphia, PA
    5237 Race Street Philadelphia, PA
    5711 Reedland Street, Philadelphia, PA
    1328 Wycombe Ave Darby Pa
    5715 Reedland Street Philadelphia Pa
    418 S 3rd Street Colwyn Pa
    1339 Narragansett Street Philadelphia Pa
    1508 Rainer Rd Brookhaven Pa
    735 S Cecil Street Philadelphia Pa
    5107 Folsom Street Philadelphia Pa
    21 N Edgewood Street Philadelphia Pa
    137 N Ruby Street Philadelphia Pa

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

The deadline for filing a Proof of Claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after entry of an order authorizing the rejection of the lease or contract. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

    G.    Tax Consequences of Plan

Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

The Debtor is not aware of any tax consequences as a result of confirmation of the Plan. Nevertheless, there may be tax consequences to the Debtor and creditors as a result of any discharge, or in connection with the receipt of plan consideration after confirmation.

    IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in § 1129 of the Code. These include the requirements that: (1) the Plan must be proposed in good faith; (2) if a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders; (3) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (4) the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## A. Who May Vote

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan.

Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Classes 1 through 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that no Classes are unimpaired.

### 1. What is an allowed claim or an allowed eq interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either: (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was March 5, 2019.*

### 2. What is an impaired claim or impaired equity interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is not entitled to vote

The holders of the following five types of claims and equity interests are not entitled to vote:

i. holders of claims and equity interests that have been disallowed by an order of the Court;
ii. holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
iii. holders of claims or equity interests in unimpaired classes;
iv. holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
v. holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
vi. administrative expenses.

confirmation of the Plan and to the adequacy of the Disclosure Statement.

4. Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless: (1) all impaired classes have voted to accept the Plan; or (2) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2.

1. Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than 1⁄2 of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least 2/3 in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

D.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. Ability to initially fund plan

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit C.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

V.  EFFECT OF CONFIRMATION OF PLAN

A.  Discharge of Debtor

Discharge if the Debtor is an individual and 11 U.S.C. § 1141 (d)(3) is not applicable. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141 (d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B.  Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to: (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the

Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

### A. Injunction

ALL UNSECURED CREDITORS OF THE DEBTOR, AS OF THE PETITION DATE, SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTIONS, IN LAW OR EQUITY, THAT WERE OR COULD HA VB BEEN BROUGHT AGAINST THE DEBTOR. AS A RESULT OF CONFORMATION OF THIS PLAN, ALL CLAIMS, WHETHER SCHEDULED OR FILED, AND CAUSES OF ACTION AGAINST THE DEBTOR ARE RELEASED.

Dated:
November 7, 2019

By: _____
Earle S. Greer, Plan Proponent

Dated:
November 7, 2019

By: _____
Valerie A. Hibbert, Esquire
22 North Lansdowne Avenue
Lansdowne, PA 19050
Telephone: 610.622.3660
vah963@gmail.com
*Counsel for the Debtor*